IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

    v.                                                              Criminal No. 3:13cr133 (DJN)

JOSEPH A. PRATER, SR.,
    Defendant.

**MEMORANDUM OPINION**
**(Denying Motion for Compassionate Release)**

On August 6, 2013, a grand jury returned a four-count Indictment against Defendant Joseph A. Prater, Sr., ("Defendant") charging him with drug and firearm-related offenses. Defendant pled guilty to two of the four counts — Count One and Count Three — on September 16, 2013. Count One charged Defendant with possession with intent to distribute 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii). Count Three charged Defendant with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). On December 16, 2013, then-United States District Judge James R. Spencer sentenced Defendant to a total of 188 months' imprisonment, a four-year term of supervised release and a special assessment of $100. Defendant has a projected release date of November 4, 2026.

This matter now comes before the Court on Defendant's Motion for Compassionate Release (ECF No. 50-1), which moves pursuant to 18 U.S.C. § 3582(c)(1) for Defendant's release in light of his medical conditions and the outbreak of Coronavirus Disease 2019

("COVID-19").[1] For the reasons set forth below, the Court DENIES Defendant's Motion (ECF No. 50-1).

## I. BACKGROUND

### A. Defendant's Underlying Offense

Defendant's conviction stems from an attempted straw purchase by a woman at the Green Top Sporting Goods Store in Hanover County, Virginia. (October 1, 2020, Presentence Investigation Report ("PSR") (ECF No. 43) ¶ 14-3.) Specifically, on May 3, 2013, officers from the Virginia State Police responded to a call of suspicious activity related to the sale of a firearm at the above-named location. (PSR ¶ 14-3.) Upon arrival, officers questioned a woman at the scene who had attempted to purchase a firearm. (PSR ¶ 14-3.) During questioning, the woman admitted that Defendant had directed her to purchase a firearm on his behalf. (PSR ¶ 14-3.) The officers then located Defendant in the store's parking lot and took him into custody. (PSR ¶ 14-4.) A subsequent search of his person uncovered a plastic bag containing 58.9 grams of cocaine base. (PSR ¶ 14-4.) Additionally, after Defendant's arrest, the officers found a firearm, more cocaine and digital scales inside a vehicle that Defendant had been operating. (PSR ¶ 14-4.) Defendant possessed the cocaine base with the intent to distribute it, and possessed the firearm in furtherance of that drug-dealing activity. (PSR ¶ 14-4.)

---

[1] On August 31, 2020, Defendant, proceeding *pro se*, filed his initial Motion for Compassionate Release (ECF No. 36). The Court then appointed counsel for Defendant, who filed a renewed Motion for Compassionate Release Pursuant to Section 603(b) of the First Step Act (ECF No. 50-1) on Defendant's behalf. Because Defendant's counsel has reviewed Defendant's initial arguments and incorporated them into Defendant's renewed Motion (ECF No. 50-1), for the same reasons that the Court denies Defendant's renewed Motion, the Court also DENIES Defendant's initial Motion (ECF No. 36).

2

### B. Procedural History

On August 6, 2013, a grand jury returned a four-count Indictment against Defendant which, in relevant part, charged Defendant with possession with intent to distribute 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). (Indictment (ECF No. 12) at 1-3.) Then-United States Magistrate Judge M. Hannah Lauck arraigned Defendant on August 14, 2013. (ECF No. 14.) On September 16, 2013, Defendant appeared before the undersigned and entered a guilty plea to Counts One and Three of the Indictment. (ECF No. 15.) At his sentencing hearing on December 16, 2013, Judge Spencer sentenced Defendant to 188 months' imprisonment and a four-year term of supervised release. (ECF No. 31.)

### C. Defendant's Motion for Compassionate Release

Earlier this year, the first cases of COVID-19 emerged in the United States, including within the federal prison system. *See* Fed. Bureau of Prisons, COVID-19 Coronavirus, www.bop.gov/coronavirus (showing updated figures on the number of inmates and prison staff who have tested positive for COVID-19). In response, on October 31, 2020, Defendant moved for compassionate release pursuant to § 3582(c)(1)(A). (Def.'s Mot. for Compassionate Release Pursuant to Section 603(b) of First Step Act (Compassionate Release) ("Def.'s Mot.") (ECF No. 50-1) at 1.)

In support of his Motion, Defendant argues that the Court should release him on home confinement, because his medical conditions render him particularly susceptible to COVID-19. (Def.'s Mot. at 1-2, 13-17.) Specifically, Defendant avers that he suffers from human immunodeficiency virus ("HIV"), which "gradually weakens a person['s] immune system

3

making it harder to fight off infections and diseases." (Def.'s Mot. at 14.) Defendant further submits that, based on his interpretation of the relevant data, his condition has worsened, rendering him increasingly more vulnerable to infection. (Def.'s Mot. at 16.) Defendant also claims that he suffers from prostrate and bladder issues which require him to see a specialist outside the prison. (Def.'s Mot. at 16.) Thus, Defendant contends that his medical history increases the likelihood of COVID-19 complications should he contract the disease. (Def.'s Mot. at 13-17.) Additionally, Defendant maintains that he faces a particularized risk of contracting COVID-19, because his conditions of confinement preclude him from observing COVID-specific CDC guidance. (Def.'s Mot. at 9-13.)

As for whether his release comports with the relevant § 3553(a) factors and policy statements, Defendant argues that he has engaged in regular programming while incarcerated and has worked hard to learn productive skills. (Def.'s Mot. at 17-19.) Specifically, during his time in prison, Defendant avers that he has learned graphic-design skills, taken classes to become bilingual and has obtained a commercial driver license ("CDL"). (Def.'s Mot. at 17.) Further, Defendant maintains that he does not represent a danger to public safety, because his "offense did not involve violence, did not include a supervisory role" and involved the retail — as opposed to the wholesale — distribution of drugs. (Def.'s Mot. at 17.) Additionally, Defendant notes that "he was not living a lifestyle that included expensive cars and other luxuries" and suggests that financial hardship motivated his involvement in the instant offense. (Def.'s Mot. at 18.)

Finally, Defendant argues that he has a viable release plan. (Def.'s Mot. at 19.) Specifically, Defendant intends to live with his wife and her mother in Richmond, Virginia. (Def.'s Mot. at 22.) If released to home confinement, Defendant states that he intends to use his

4

graphic design skills to open a business with his wife. (Def.'s Mot. at 22.) In a similar vein, Defendant points to the family's equity in their home and their lien-free vehicles as evidence that Defendant stands well-situated to return to life outside prison. (Def.'s Mot. at 19.)

The Government filed its Response in Opposition to Defendant's Motion for Compassionate Release on November 27, 2020 (Gov't's Resp. in Opp'n to Def.'s Mot. for Compassionate Release ("Gov't Resp.") (ECF No. 52), and Defendant filed his Reply in Support of Compassionate Release on December 3, 2020 (Def. Reply in Supp. of Compassionate Release ("Def.'s Reply") (ECF No. 60-1)), rendering the matter now ripe for review.

## II. STANDARD OF REVIEW

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify a criminal defendant's sentence for "extraordinary and compelling reasons" "upon motion of the Director of the Bureau of Prisons" or "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i). By its plain language, § 3582(c)(1)(A) requires defendants to first exhaust administrative remedies or wait thirty days after requesting that the warden of their facility file a motion for a sentence reduction; however, courts have waived this requirement when enforcing it would prove futile. *See, e.g., Washington v. BOP*, 2019 WL 6255786, at *2 (N.D. Ohio July 3, 2019) (explaining in addressing motion for recalculation of good time credit under First Step Act that "[t]he failure to exhaust administrative remedies may be excused if seeking administrative remedies would be futile").

5

Once the administrative remedies under § 3582(c)(1)(A) have been exhausted or waived, the Court may reduce or modify a sentence when "extraordinary and compelling reasons warrant such a reduction." In determining what constitutes "extraordinary and compelling reasons," courts have considered related policy statements under the United States Sentencing Guidelines, though such statements are not binding. *See, e.g.*, *United States v. Beck*, 425 F. Supp. 3d 573, 582 (M.D.N.C. 2019) (considering what the Sentencing Guidelines defined as "extraordinary and compelling reasons"). These policy statements provide that a defendant's medical conditions, age, family circumstances or other circumstances, either singly or in combination, can prove sufficiently extraordinary and compelling to justify compassionate release. USSG § 1B1.13, application notes 1(A)-(D).

However, to be extraordinary and compelling, a defendant's medical conditions must be either "terminal . . . with an end of life trajectory" or must "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13, application note 1(A). Similarly, a defendant may be released based on his advanced age when he "is at least 65 years old," "is experiencing a serious deterioration in physical or mental health because of the aging process" and "has served at least 10 years or 75 percent of his or her term of imprisonment." § 1B1.13, application note 1(B). Defendants may also seek compassionate release based on family circumstances, including when the caregiver of a defendant's minor child has died or become incapacitated, or when the defendant's spouse or partner has become incapacitated and the defendant constitutes the only available caregiver. § 1B1.13, application note 1(C). Finally, the Sentencing Guidelines contemplate situations in which "there exists in the defendant's case an extraordinary and compelling reason [for compassionate release] other than, or in combination

6

with, [the defendant's medical conditions, age and family circumstances]." § 1B1.13, application note 1(D).

Relevant here, "[i]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling* (*Feiling I*), 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (citing *United States v. Dungee*, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020); *United States v. Edwards*, 451 F. Supp. 3d 562, 567-68 (W.D. Va. 2020)). "To establish a particularized risk of contracting COVID-19, an inmate must first demonstrate that cases of COVID-19 have emerged at his facility." *United States v. Feiling* (*Feiling II*), 2020 WL 5047064, at *7 (E.D. Va. Aug. 26, 2020). However, even then, "COVID-19 and an inmate's susceptibility to it do not justify compassionate release when . . . the inmate refuses additional protections afforded to him by the BOP without good cause and continues to voluntarily place himself in an environment in which he faces the highest risk of contracting the disease." *Id.*

Even if extraordinary and compelling reasons exist for a defendant's compassionate release, § 3582(c)(1)(A) requires courts to consider "the factors set forth in section 3553(a) to the extent they are applicable" and "applicable policy statements issued by the [United States] Sentencing Commission" before granting a sentence modification. To that end, § 3553(a) requires courts to consider, among other factors, the nature and circumstances of the underlying offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant. 18 U.S.C. § 3353(a)(1)-(2). Additionally, the Sentencing Commission has advised

7

courts to consider whether, based on the factors set forth in 18 U.S.C. § 3142(g), a defendant would present a danger to the safety of any other person or the community if released.[2] USSG § 1B1.13(2). And the Sentencing Commission has emphasized that a defendant's rehabilitation while incarcerated, alone, proves insufficient to warrant a sentence reduction. § 1B1.13, application note 3.

Ultimately, the Court may grant compassionate release only after a defendant establishes an extraordinary and compelling reason for his release and the Court finds that the defendant's release would not undermine the relevant § 3553(a) factors or any relevant policy statements issued by the Sentencing Commission.

### III.   ANALYSIS

#### A.   Defendant Does Not Demonstrate that Extraordinary and Compelling Reasons Entitle Him to Compassionate Release.

Defendant must show that his circumstances present "extraordinary and compelling reasons" entitling him to compassionate release. Defendant argues that the heightened risk of contracting COVID-19 in prison coupled with his preexisting health conditions could result in a high risk of developing serious COVID-19 complications. (Def.'s Mot. at 1-2, 18-19.)

In response to Defendant's Motion, the Government argues that Defendant has not made the threshold showing of extraordinary and compelling reasons for compassionate release.

---

[2] As modified in the context of a compassionate release motion, before releasing a defendant, courts should consider: (1) the nature and circumstances of the offense of conviction, including whether the offense is a crime of violence, a violation of § 1591, a terrorism offense, or an offense involving a minor victim, controlled substance, firearm, explosive or destructive device; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including his or her character, physical or mental condition, family and community ties, financial resources, history of substance abuse and criminal history, as well as whether at the time of the instant offense, the defendant was on a period of probation, parole or other form of release; and, (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4).

(Gov't Resp. at 7-14.) Specifically, the Government contends that Defendant's HIV — standing alone — does not constitute an extraordinary and compelling reason for compassionate release. (Gov't Resp. at 9-13.) First, the Government points out that the CDC classifies HIV as a condition that "might" pose an increased COVID-related health risk and, therefore, does not alone meet the extraordinary and compelling standard. (Gov't Resp. at 10) citing Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html).) Additionally, the Government highlights that none of Defendant's medical records show that Defendant presently suffers from HIV-related symptoms or any associated ailments. (Gov't Resp. at 10.) Indeed, the Government argues that Defendant's most recent medical records prove that he remains asymptomatic and healthy under his current medications. (Gov't Resp. at 10; Bureau of Prisons Health Servs. Rec. ("Med. R.") (ECF No. 56-1).) Finally, the Government contends that medical professionals at BOP are monitoring Defendant's health conditions and taking appropriate steps to address them. (Gov't Resp. at 10-11.) The Court agrees with the Government.[3]

The Court finds that Defendant has not established an extraordinary and compelling reason for his release. As mentioned, "[i]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows

---

[3] The Government does not address whether Defendant has exhausted his administrative remedies. (*See generally*, Gov't Resp.) Defendant, however, asserts that he has requested compassionate release through requests submitted to the warden of the facility housing him. (Def.'s Mem. at 5-6.) As such, the Court assumes that the Government has conceded that Defendant exhausted his administrative remedies, and will address Defendant's Motion on the merits.

9

both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *Feiling I*, 453 F. Supp. 3d at 841 (citations omitted). Here, Defendant has not shown a particularized susceptibility to the disease.

To establish a particularized susceptibility to COVID-19, courts have required defendants to provide evidence that they suffer from a medical condition identified by the Centers for Disease Control and Prevention ("CDC") as a COVID-19 risk factor. *See, e.g., United States v. Beahm*, 2020 WL 4514590, at *2 (E.D. Va. Aug. 5, 2020) (finding the defendant particularly susceptible to COVID-19, because the defendant suffered from type II diabetes, which the CDC has identified as a COVID-19 risk factor); *United States v. White*, 2020 WL 3442171, at *5 (E.D. Va. June 23, 2020) (finding that the defendant had a particularized susceptibility to COVID-19, because he suffered from several medical conditions identified as COVID-19 risk factors). However, courts have found that certain conditions — such as HIV — do not constitute an extraordinary or compelling reason for compassionate release, absent some evidence of a diminution in the defendant's health. *United States v. Flournoy*, 2020 WL 6372936, at *3-4 (S.D. Ga. Oct. 29, 2020) (stating that the court "is unwilling to conclude that a condition [i.e., HIV] that 'might' put a defendant at an increased risk qualifies his circumstances as extraordinary and compelling enough to warrant early release" "[p]articularly . . . where [defendant's] medical records indicate he is asymptomatic and has never had an HIV-related illness."). Additionally, a general fear of contracting COVID-19, without a sufficient basis for that fear, does not provide an extraordinary and compelling reason for a defendant's release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society . . . cannot independently justify compassionate release."); *Feiling I*, 453 F. Supp. 3d at 841 ("Notably, 'the *fear* of contracting a communicable disease' proves insufficient to justify a

10

sentence modification." (quoting *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (emphasis added))).

In the instant case, Defendant argues that he has a particularized susceptibility to COVID-19 due to his HIV diagnosis, prostrate and bladder issues. (Def.'s Mot. at 13-17.) However, the Court's review of Defendant's health records reveals that Defendant's condition proves not so severe as to establish a particularized susceptibility to COVID-19.

For one, the CDC has not concluded that individuals with HIV "are at increased risk of severe illness from" COVID-19. Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html. Instead, the most current CDC guidance reveals that such individuals only "might be at an increased risk." *Id.* Additionally, Defendant's medical records show that he remains in otherwise good health. For example, on August 27, 2020, and September 4, 2020, Defendant's medical examination revealed that he "is stable on current regimen." (Med. R. at 1, 4.) Although Defendant's counsel argues that Defendant's "numbers on his tests are trending in the wrong direction," counsel does not provide a professional medical analysis to support that conclusion. (Def.'s Mot. at 16.) Indeed, Defendant has not even shown that his HIV is symptomatic, let alone that it has worsened to such an extent that it "substantially diminish[es] [his] ability . . . to provide self-care within the environment of a correctional facility." § 1B1.13, application note 1(A). Finally, with respect to the prostrate and bladder issues, Defendant's medical records belie the contention that those conditions present extraordinary and compelling reasons for compassionate release. (Med. R.

11

(ECF No. 50-2) at 88 ("Follow up evaluation [following bladder-related complaints] by PSA and digital prostrate exam demonstrate normal findings.").) Ultimately, the Court finds that the medical evidence does not support a finding that Defendant's HIV renders him particularly susceptible to COVID-19.

> **B.     The Court Finds that the § 3553(a) Factors Do Not Support Defendant's Release.**

The Court also finds that the § 3553(a) factors do not support Defendant's release. In support of his Motion, Defendant argues that he will not present a danger to the community if released, because he qualifies as a non-violent offender and has learned productive skills during his time in prison. (Def.'s Mot. at 17.) Defendant further contends that he has a viable release plan, which includes living with his wife and starting a business with her. (Def.'s Mot. at 19.)

The Government argues that Defendant's release would undermine the relevant § 3553(a) factors and policy statements. (Gov't Resp. at 15-18.) The Government asserts that Defendant remains a danger to the community, noting that Defendant qualifies as a career offender due to a history of drug trafficking and violent crimes. (Gov't Resp. at 16.) Additionally, the Government notes that the instant offense involved Defendant's possession of over 50 grams of crack and powder cocaine. (Gov't Resp. at 16.) More troubling, the Government argues that Defendant's volume of drug-dealing — specifically, that he visited his supplier twice a week for the two years preceding his arrest — shows that Defendant's criminal activity endangered the health and safety of the community. (Gov't Resp. at 16; PSR ¶ 33.) Finally, the Government emphasizes that Defendant has a lengthy criminal history that preceded the instant offense, and that, upon his release from incarceration in 2009, he returned to crime. (Gov't Resp. at 16-17.)

The Court agrees with the Government and finds that the relevant § 3553(a) factors do not support Defendant's compassionate release. First, Defendant's instant offense and criminal

12

history show that releasing Defendant would not adequately protect the public. Defendant has proved his willingness to deal drugs on a large scale and to use violence in furtherance of that drug-dealing activity. For instance, Defendant visited his drug supplier twice a week for the two years preceding the instant drug offense. (PSR ¶ 33.) And, the instant offense does not represent Defendant's first drug-dealing conviction. Indeed, in 1989, Defendant's decision to distribute approximately $5,000 worth of cocaine per week led to his conviction of possession of cocaine with intent to distribute. (PSR ¶ 69.) Additionally, Defendant has demonstrated a willingness to resort to violence. Specifically, in 1992, Defendant inflicted three gunshot wounds to a victim in a drug-related shooting. (PSR ¶ 70.) That shooting resulted in a malicious wounding conviction, for which the court sentenced Defendant to twenty years' incarceration. (PSR ¶ 70.) After Defendant's release from custody in July 2009, he returned to criminal activity within months. (PSR ¶ 73 (showing conviction for petit larceny stemming from a February 2010 arrest).) And, of course, Defendant committed the instant offense after having served a substantial period of incarceration for the malicious wounding conviction, discussed above. As such, Defendant presents a serious recidivism risk.

Together, both the nature and circumstances of Defendant's underlying offense and his criminal history weigh against his release. Ultimately, even if extraordinary and compelling reasons did exist for Defendant's compassionate release, the Court, in its discretion and after considering the relevant § 3553(a) factors and policy statements, finds that releasing Defendant at this time would not adequately protect the public, promote respect for the law, deter Defendant and others from engaging in similar conduct or reflect the seriousness of Defendant's offense. Accordingly, the Court DENIES Defendant's Motion for Compassionate Release.

## IV. CONCLUSION

For the reasons set forth above, the Court DENIES Defendant's Motion for Compassionate Release (ECF No 50-1). An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: January 6, 2021